The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention that the Court is now safe. God save the United States and this Honorable Court. Good morning. Our first case for oral argument this morning is Maly v. Illinois State Board of Elections, appeal number 24-2979. Mr. Barnhart, whenever you're ready. Your Honors, may it please the Court, Andy Barnhart on behalf of Appellant Rochelle Maly. Appellant's injury is her lost confidence in the integrity of Illinois elections due to the use of electronic voting machines, causing her to give up her plans of running for office and serving as precinct committee person, which infringed her First Amendment right to associate. Under the standard of review, Appellant has alleged sufficient facts, which must be accepted as true, to make her lost confidence injury plausible, actual, particularized, concrete. First, a couple of facts that this Court must accept as true. Appellant Maly did plan to run for office and serve as precinct committee person. And as a result of the use of electronic voting machines in Illinois, she gave up those plans due to her lost confidence. Now there's a few legal conclusions that are indisputable. In the Seventh Circuit, a person's interest in running for office and serving as precinct committee person is a protected First Amendment right to associate. And according to the Supreme Court, lost confidence in the integrity of elections drives honest citizens out of the electoral process, which plausibly led Appellant Maly to give up her plans of running for office and serving as precinct committee person. So that boils it down to really just one question for the Court. Were her allegations of election interference due to the use of electronic voting machines a plausible basis for her to lose confidence? That's the question. Did she make sufficient allegations to make it plausible that she would lose that confidence? Now, I want to just go back and state one thing that the United States Supreme Court says when I said that the Court says that lost confidence drives honest citizens out of the process. This is a quote from Purcell v. Gomez in 2006. Confidence in the integrity of our electoral process is essential to the functioning of a participatory democracy. Voter fraud drives honest citizens out of the process and breeds distrust of our government. Voters who fear that their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised. So it's not a question of whether her lost confidence will cause her to give up her plans of running for office and serving as precinct committee person. The Supreme Court says, yeah, that's what happens. The question is whether she pled sufficient facts to make her lost confidence plausible. And that's what I want to focus on. She's not alleging any actual fraud, correct? I disagree with that, Your Honor. And that was really, I think, the premise of why the district… That's what the blue brief tells us. What's that now? That's what the appellant's brief told us. Now, I gather you didn't write that, did you? I didn't, Your Honor. But it emphasized that her claim does not depend upon any actual fraud in Illinois elections. And if I could back up to what she actually responded with in the district court in her opposition brief. Because the respondents in the district court did specifically argue… Excuse me. I'm quoting page 21 of the appellant's brief in this court. The plaintiff's complaint was not premised on actual fraud occurring in Illinois, but rather on the inherent susceptibility to fraud of the electronic voting systems used in Illinois. So her claim does not depend upon alleging actual fraud or proving it, correct? I agree she says that. And you're disavowing that? Yes. And here's—can I explain why, Your Honor? Sure. I'll be very interested to hear. What matters is what facts were in front of the district court. What I contend is that what she said as a pro se plaintiff in her initial opening brief to this court does not change what was actually available to the district court with regard to facts that she alleged in her complaint. And so if I could, I will point out that at the district court level, when the respondents argued in their brief in support of their motion to dismiss for lack of standing, they said she never alleges past election interference in Illinois. And that's what Your Honor is talking about. And I understand it's critical here. What she says on page 5 of her brief in opposition to that is she says, Further, defendants state that my brief contains no facts specific to Illinois. In regards to facts relevant for Illinois, these facts are covered in the number 44, that's the Second Amendment complaint, paragraphs 6 through 10, as expert Mara includes in her affidavit that the vote manipulation occurs in all machines as they run the same software, which thereby includes Illinois. And so she specifically refutes that idea that she didn't allege that there was prior vote interference in Illinois due to the use of electronic voting machines. We're in the complaint, as she read that. You're reading from the briefing, but we're in the complaint. Paragraphs 6 through 10, and that's where she incorporates the Mara's affidavit. She talks about the entire breakdown of what Maley and what Halderman talk about, and specifically she cites the fact that all electronic voting systems utilize the same software designed for vote manipulation. That's in her complaint. But it says it could manipulate. At parts it says it could, but at other parts... There's nothing in there that says it has been manipulated. Your Honor, if you look at Exhibit 8, which she references, and in fact I want to point out that the district court states in its order that the closest that the Second Amendment complaint comes to alleging past Illinois election interference is with regard to how she incorporates Exhibit 8. And I want to talk about what Exhibit 8 actually says, and I want to point out that it's entitled 2020 Presidential Election Startling Vote Spikes, and it is a statistical analysis of state vote dumps in the 2020 presidential election. They say the conclusion is that... So is this case then an effort to re-litigate the 2020 election totals? This case is pointing out that her last confidence is based on what happened in the 2020 election, but due to vulnerabilities that have existed in electronic voting systems since 2000. Mr. Barnhart, is this a case that, in essence, any voter in Illinois could bring? No. She's narrowed the playing field considerably for two reasons. One, she's bringing this as someone planning on running for office and having demonstrated that she's been significantly involved in the electoral process serving there. And then further, she's actually incurred a tangible cost by withdrawing her plans to run. As Judge Posner said... So basically, any voter, though, could say, I would have done something differently here. Well, that voter would have to allege under oath that they've already demonstrated a track record of serving in elections, not just voting, and that... So... Go ahead. No, you go ahead. Well, I was going to shift slightly, so go ahead, Judge Gershwin. Why would they have to demonstrate that? Because that's what particularizes her injury. And I want to just point something out, and then I'm going to have to reserve... Is this my 10 minutes, or was this starting at 8? 10. You have 2 minutes and 21 seconds.  Okay.  So I'm going to make one point, then I'll reserve the rest for rebuttal. What distinguishes her case from the other cases I'm sure Your Honors are thinking about, including Boast and the Mancini case, the Lake case out of the Ninth Circuit, is that in those cases, the plaintiffs took issue with aspects of elections without ever alleging that those defects were designed for fraud. Okay? They maybe claimed that the late-arriving vote shouldn't be counted or that voter registration rolls should be cleaned up, but they could never allege that those defective systems were designed for fraud. And therefore, the only way they could show an injury is if they could show that the use of those defective systems were going to actually cause them to have a poor result. But the courts pointed out consistently, you don't know whether or not counting late-arriving ballots or the vote being diluted is going to actually hurt you rather than harm you. You could have most of your supporters vote in these late-arriving ballots, and it would help you. But what she's alleging is that, and she says it very specifically, is that all electronic voting machines run the same software designed for fraud, and it's been in use since 2000 and affected the 2020 elections. She's saying, I can't participate in these elections when I know that they're built on fraud. It doesn't matter if they end up getting used to my favor. I don't want to win if it was based on fraud because that violates my principles. If I understand your theory of standing here correctly, it's really limited to, in essence, the integrity of voting, right? Absolutely. And would not extend. There are many other situations in which, for example, I might be unhappy with the government and I might be very worried about the effectiveness of missile defense shields or about whether the FDA is doing a good job of checking the safety and efficacy of drugs and medical devices. If I'm sufficiently worried about one of those things, can I get an injunction? No, because you're not participating directly in that process like she is as a potential candidate. She's not participating directly. She has participated since 2016 in the primaries. She's worked in various states doing election poll monitoring, and she planned and expressed interest publicly of serving as a precinct committee person who participates in shaping party policy and selecting candidates. It's something that specifically shows that she's aligning with a particular party, and that is a protected First Amendment right to associate, like the Newcomb v. Brennan case says in this circuit. So she's very much distinguished, Your Honor, from someone who just doesn't like the way our missile defense program works. They're not participating directly in that process, so they don't have a stake in it. I'm out of time. We'll give you one minute for a rebuttal. Thank you very much. Good show. Good morning. Good morning, Your Honors, and may it please the Court. My name is Alexandrina Shrove, Assistant Attorney General on behalf of Defendants Appellees, the Illinois State Board of Elections, and its board members. Malley lacked standing to challenge Illinois' use of electronic voting machines in its elections because she did not suffer an injury in fact that was concrete, particularized, and imminent. Therefore, the district court correctly dismissed her complaint for lack of standing, and this court should affirm that decision. Now, before addressing the three prongs of injury in fact analysis, I want to clarify what was and was not Malley's alleged injury here. For the entirety of this case, she has challenged her standing as a voter, not as a potential candidate. She's argued that her injury was the potential for vote manipulation that allegedly could occur because of technological security flaws in the software of Illinois' electronic voting machines. Yet, here today and in her reply brief, she's argued for the first time that she suffered injuries to her constitutional right to association, that her lost confidence in the legitimacy of Illinois elections has caused her to alter her plans to run for committee person or to run for office. In doing so, she's attempted to reframe her injury here as that of a political candidate rather than, you know, challenge her standing as a voter. But the district court couldn't have misconceived her injury below where she didn't allege a constitutional right to association in her complaint. She did not argue her standing as a candidate in her response to summary judgment nor did she do so in her opening brief before this court. She's raised this argument for the first time in her reply brief on appeal and at argument today and has such forfeited any such challenge. If we agree with you and the day after we issue such an opinion, she files a new case in the district court making those allegations, what happens? Well, first off. And asserting the candidate theory. I mean, first off, there is potentially a timeliness issue depending on when it was that she intended to run. Next. That's easy to fix. There are still many facts that are missing that she would have to allege that simply are not here. What? What would they be? Well, first off, she alleges that her intention was to run for committee person and to run on behalf of a potential set of voters, yet doesn't ever say who those voters are, what political party she's intending to run on behalf of, where she's intending to run on behalf of, or demonstrated. That all sounds pretty easy to fix, right? Sure. And if that's the case, then that is a very different case than the one we have here. But we don't have any of those allegations here. Does the state think that, for example, any candidate, an actual filed candidate, would have standing to bring this kind of a case before the next election to force a change in the system? Well, I think that's relatively similar to the case Bost versus the State Board of Elections that was recently before the Supreme Court, in which one of their arguments was challenging, if you are a candidate, can you challenge the entirety of your candidacy and laws that affect that? And I think that if we were to extend your hypothetical to the fullest extent, that would depend on the decision that comes down from the Supreme Court. But here, not only did she forfeit this argument, but we don't have any of the similar facts that we had in that case. We don't know who she's running on behalf of. We don't have any history of her actually running. We don't have any documentary evidence to suggest that she had intentions of running. And I want to emphasize that in the opening argument, Malley maintained that she alleged that there was actual fraud in Illinois at some point. Now, I disagree with that. As Your Honor pointed out in her opening brief, she explicitly says that her complaint was not based on any actual fraud alleged, but rather on the susceptibility of the machines themselves. But even if we look to the allegations and read them as broadly as humanly possible to suggest that there was fraud in the 2020 Illinois elections, she relies on a report entitled Spiked Voter Report claiming that there were large dumps of Biden votes in the 2020 election here in Illinois. But that report itself contradicts her allegations in her complaint because the report itself says, and I quote, we cannot determine exactly what happened to cause the dumps of votes. And later goes on to say that that report recognized that it could have happened for a legitimate reason. So her own exhibits to her complaint undermine her allegations within her complaint that any actual election fraud happened during the 2020 election. Who would have standing to challenge this process? I think conceivably there is a person who could challenge the use of a particular type of electronic voting machine within their district. But I would point out that there are 102 counties in Illinois and every single county uses a different voting system. And so we have no information about the various types of electronic voting machines used within the districts here. We don't have any of those allegations. And I think that, to your question, there is feasibly a person within a particular county that could potentially demonstrate standing by challenging the use of their electronic voting machines with more facts that were particularized to the types of machines that were used within their county and any facts about their county and the process in which they run elections. Because every county runs their elections a bit differently. We don't have any of those allegations here. I assume state law imposes some standards on voting systems. Is that correct? I'm sorry. I assume that state law imposes some requirements or standards for voting systems. For example, you're allowed to vote privately, right? Anonymously. Does state law require, in essence, an auditable paper trail of paper or cardboard ballots? I don't know if there is a law in particular that requires that. Or regulation from the Illinois Board of Elections? If they specifically require a paper trail? Yeah, an auditable, something you can recount. People have been worried about manipulating the software for many decades. I was involved in some litigation about that more than, well, a long, long time ago. And the question is, does the system produce ballots that you can recount? And you're telling me you don't know if that's required or not. Well, I think the first issue with your hypothetical is that we're assuming that all of these machines are the same. It's not a hypothetical. I'm asking whether there's a standard across the state that requires an auditable, recountable, physical product from the voting. Your Honor, I don't have the answer to that question in front of me today. But if your Honor is concerned about that, I would be happy to submit supplemental briefing to discuss that. Now, turning back to, really quickly, Mally's actual alleged injury here as a voter. She has not alleged that her injury was concrete, particularized, or imminent. She hasn't alleged that she suffered an injury that actually existed. She hasn't alleged an injury, in fact, as a voter that was particularized to her. There's virtually no difference between her allegations and allegations that any voter, either in Illinois or across the United States, could make here. And she hasn't demonstrated that any possible future vote manipulation was certainly impending. She hasn't alleged that any actual vote manipulation occurred, simply that these machines are susceptible to vote manipulation, which, again, underscores how her claim is not particularized, because she alleges that every single machine is susceptible to manipulation or fraud, demonstrating that her claim is not particularized to her. It is one shared potentially by all Illinois voters and all United States voters. For these reasons, and the reasons stated in our brief, we request that this court affirm the district court's decision below. Thank you. Thank you, Ms. Schovanec. Mr. Barnhart, we'll give you a minute. Is that drawing the blocking up? No, it doesn't. You can even clear your throat a few times before we start the clock. Okay. Judge Hamilton, I want to first address the question you posed to opposing counsel. I don't know how there could be a law in Illinois that says that you have to count paper ballots and audits that actually show the vote, because what the Kerling v. Rasberger case in Georgia shows, and that's cited extensively in the brief when they did that extensive study by expert, it starts with an H. Anyways, he said, and some of these ballot marking devices are used in parts of Illinois as well, same ones that were studied in that case in Georgia. And what the result is is that when you make your selection on a touchscreen, it pumps out a paper ballot that purports to contain your vote, but it's all contained in a barcode that you can't read. And then you walk it over. That's a problem. That is a big problem. And that's her allegations. Now, we don't know exactly how many counties in Illinois use that, but we know on the record from the Georgia case that their expert says it's used in parts of Illinois. So how could there be a law saying that you've got to be able to audit paper ballots that show the vote when this is in play? I want to go to the… Actually, your time is up. One more point? Unless the panel has any additional questions. Okay. Thank you. Yes. Thanks to both counsel in the case, and the court will take the case under advisement.